<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **OMEGA, S.A., and THE SWATCH GROUP, INC.,** | **03-CIV-5808 (WJM)** |
| **Plaintiffs,** | |
| **v.** | **OPINION** |
| **GIFTLAND CO., et al.,** | **HON. WILLIAM J. MARTINI** |
| **Defendants.** | |

Jess M. Collen, Eq.
Matthew C. Wagner, Esq.
Collen IP
The Holyoke-Manhattan Building
80 South Highland Ave.
Ossing, NY 10562
    *(Attorneys for Plaintiffs)*

Edward N. Vaisman, Esq.
Vaisman Law Offices
33 Wood Ave. South
Suit 600
Iselin, NJ 08830
    *(Attorney for Defendant)*

**MARTINI, U.S.D.J.**:

This matter comes before the Court on Plaintiffs' motion for summary judgment against

Defendant Volodymyr Piven ("Piven").  The Court heard oral argument on July 13, 2005, shortly

after Piven obtained legal representation for the first time in these proceedings.  For the reasons

set forth below, Plaintiffs' motion for summary judgment is **DENIED**.

## BACKGROUND

Plaintiff watch manufacturers, Omega, S.A. ("Omega") and The Swatch Group (U.S.)

Inc. ("Swatch"), initiated this action in December 2003 against numerous Defendants alleged to have engaged in a scheme to violate Plaintiffs federal and state law rights in the trademarks OMEGA, SEAMASTER, SPEEDMASTER, and CONSTELLATION through the sale of unauthorized replicas on various websites.  Only Piven, a non-citizen with limited English-language ability, has appeared to defend this action.[1]  The following are the relevant facts.[2]

Plaintiffs own a number of federal trademark registrations including, in relevant part, the following:

| | |
|---|---|
| OMEGA (& design) | Registration No. 25,036 |
| OMEGA | Registration No. 566,370 |
| OMEGA (& design) | Registration No. 577,415 |
| OMEGA (& design) | Registration No. 1,290,661 |
| OMEGA (& design) | Registration No. 578,041 |
| CONSTELLATION | Registration No. 1,223,349 (individually "OMEGA CONSTELLATION") |
| SPEEDMASTER | Registration No. 672,487 (individually "OMEGA SPEEDMASTER") |
| SEAMASTER | Registration No. 556,602 (individually "OMEGA SEAMASTER"). |

In 2002 and 2003, Plaintiffs, through an investigator, investigated the website www.replicaland.com (the registered owner of which is Defendant Giftland Co.) because watches bearing the OMEGA, SEAMASTER, SPEEDMASTER, and CONSTELLATION marks were being sold and distributed over the website without Plaintiffs' permission.  As part of the

---

[1]     The Court, on June 7, 2005, entered Default Judgment against the non-appearing Defendants—Michael Sadvakassov a/k/a Mirsakhmet G. Sadvakassov, Piotr Kukharau, Jennifer Coleman, and David Druckman.

[2]     Due to Piven's failure to offer any evidence in opposition to Plaintiffs' motion, this discussion draws primarily from the evidence submitted by Plaintiffs in connection with their motion.  However, because of Piven's *pro se* status during much of litigation, this discussion also takes into account the relevant portions of Piven's affidavit (dated February 25, 2004) submitted in connection with his prior unsuccessful motion to dismiss.

investigation, Plaintiffs' investigator purchased watches at www.replicaland.com on two separate occasions—on or about October 1, 2002 and May 14, 2003—and determined that they were not authentic, a finding consistent with the statement offered on the website that "all products sold within this website are replicas, imitation or reproduction."  Plaintiffs' investigation revealed that Piven was involved in the processing of the payments made in connection with these online purchases.  Specifically, the credit card payment made in connection with the October 2002 purchase was processed by a company named "P. Design, Inc." with a telephone number of 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; although Plaintiffs' investigator could not obtain any corporate records for "P. Design, Inc.," the investigator learned that the same telephone number was used by a company named "Pyra Design," which used as its mailing address an address once used by Piven.  The investigation further revealed that the check used in connection with the May 2003 purchase was deposited in a bank account owned by Piven.  Indeed, Piven has admitted that on occasion he would receive checks from the registered owner of www.replicaland.com—Defendant Piotr Kukharau ("Kukharau")—to deposit into his account.  In exchange for providing this check depositing service Piven received 10% of the revenues derived from deposited checks, which is reflected by his check-cashing agreement with Kukharau.[3]

---

[3]     In his deposition, Piven specifically testified as to how the check cashing contract came about and about the nature of his relationship with www.replicaland.com:

> [Kukharau] said that if you [Piven] are interested you can help me with the business here because I am ineligible to work here in this state.  But you can help me and I will pay you ten percent of commission.  At that time he asked me if I have my own business account or not.  He say you want you can help me if you have business account.  I answered I have a business account.  Then he explained to me what exactly I do for him.  He explain that I will receive deposits in my account for his production.  Then from each deposit I will be getting my 10 percent of commission.  He says that in order to seal the deal, that in order to show you that it is nothing funny about it, that it's nothing elicit about it, I will give you all information about my business and I will have formal agreement between you and me that you agreed to provide me this specific service . . .  Two or three days later he

Plaintiffs acknowledge that Piven was just one among a number of individuals connected to the operation of www.replicaland.com.  (*See* Compl. ¶¶ 3, 6–8.)  In an affidavit (dated February 25, 2004) that Piven submitted in connection with his prior unsuccessful motion to dismiss, Piven shed more light on his connection to www.replicaland.com.  Specifically, Piven stated that he was brought into the operation of the website after he met the site's operator—again, Kukharau—at a fitness club sometime in 2002.  (*See* Piven Aff. dated Feb. 25, 2004 at 1–2.)  Kukharau, a Russian-speaker like Piven, identified himself as the owner of an internet mail-order site, www.replicaland.com.  After hearing about Piven's injury (Piven apparently was at the gym rehabilitating a work-related injury), Kukharau told Piven that he needed someone in New Jersey to cash checks for the website and offered Piven a 10% commission on all checks cashed in exchange for his check cashing services.  (*See id*.)  Although Piven has admitted that he viewed a website operated by Kukharau, Piven claims that the website sold hats, socks, umbrellas, handbags, wigs, sunglasses, and theater costumers, among other things.  (*See id*. at 2.)  Moreover, Piven claims not to have understood the nature of the website's business because of his limited knowledge of the English language.  (*See id.* at 2.)  Indeed, Piven, whose native tongue is Russian, asserts that he visits only Russian-based websites and that he has never had an interest in visiting www.replicaland.com.  (*See id*.)

Because of Piven's alleged involvement in the sale of counterfeit watches at www.replicaland.com, Plaintiffs brought all eleven Counts of the Third Amended Complaint against him.  Counts One and Five assert trademark infringement claims under 15 U.S.C.

---

wrote for me the [check cashing contract]."
(Piven 1/7/04 Dep. at 43:13-44:7).  The Court denied at the July 13, 2005 hearing Piven's motion to strike his own deposition testimony, which Plaintiffs rely on in connection with this motion.

§§ 1114(1), 1116.  Count Two asserts false designation of origin and unfair competition claims under 15 U.S.C. § 1125(a).  Count Three asserts another false designation of origin claim under 15 U.S.C. § 1125(a).  Count Four asserts a trademark dilution claim under 15 U.S.C. § 1125(c).  Counts Six, Seven, and Eight assert trade dress claims under 15 U.S.C. § 1125(a).  Finally, Counts Nine, Ten, and Eleven assert common law infringement, dilution, and unfair trade practice claims under New Jersey law.  Plaintiffs now move for summary judgment against Piven on Counts One through Five.[4]

## ANALYSIS

### I.    Standard of Review

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."

---

[4]    Plaintiffs' motion fails to specify as to what Counts the motion is made. However, Plaintiffs' brief addresses only the federal law claims in Counts One through Five (*see generally* Pltfs.' Mem. of Law in Support of Mot. for Summ. Judgment [*hereinafter* "Pltfs.' Br."]) and, therefore, the Court construes the motion as being limited to those federal law counts. The Court notes, however, that the state law infringement, dilution, and unfair trade practice claims would not be adjudicated any differently.  *See Major League Baseball Promotion Corp. v. Colour-Tex, Inc.*, 729 F. Supp. 1035, 1039 (D.N.J. 1990) (observing that plaintiff must prove same elements to establish either federal or common law trademark infringement and that identical facts would support common law unfair competition claim and false designation of origin claim under federal law); *J&J Snack Foods Corp. v. Nestle USA, Inc.*, 149 F. Supp.2d 136, 157 (D.N.J. 2001) (same).

Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  No issue

for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such

that a reasonable jury could return a verdict in that party's favor.  *See Anderson*, 477 U.S. at 249.

## II.    Plaintiffs' Motion for Summary Judgment Is DENIED

### A.    Plaintiffs' Federal Trademark Infringement, False Designation of Origin, and Unfair Competition Claims (Counts One, Two, Three, and Five)

Plaintiffs claim that Piven is liable for trademark infringement, false designation of

origin, and unfair competition as a result of his connection to the operation of

www.replicaland.com.  (*See* Pltfs.' Br. at 9–19.)  To prevail on such claims a plaintiff generally

must establish that: (1) their marks are valid and legally protectable; (2) they own the marks; and

(3) defendants' use of their marks to identify goods or services is likely to create confusion

concerning the origin of the goods or services.  *See Checkpoint Sys., Inc. v. Check Point Software

Tech., Inc.*, 269 F.3d 270, 279–80 (3d Cir. 2001) (setting forth elements of trademark

infringement and unfair competition); *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d

466, 472–73 (3d Cir. 1994) (observing that factors relevant to unfair competition and false

designation of origin claims under 15 U.S.C. § 1125 "essentially the same" as those relevant to

trademark infringement claim under 15 U.S.C. § 1114).  However, because Plaintiffs seek to

hold Piven personally liable for the alleged infringing activity on the website owned by Giftland

Co., Plaintiffs must show more.  Although it is generally understood that "[a] trademark . . may

be infringed by an individual as well as a corporation," 4 McCarthy on Trademarks and Unfair

Competition § 25:24 (4th ed.), it is also understood that "[t]o be personally liable, . . . [an

individual] must personally take part in infringing activities or specifically direct [others] to do

so," (*id.*).  In other words, participation in activities *merely related* to the infringing acts is not

enough.  Accordingly, the Eleventh Circuit has stated that personal liability extends only to those

persons who actively participate as a moving force in the decision to engage in the infringing acts

or otherwise cause the infringement as a whole to occur:

> Merely selling the items cannot turn [a participant] into a moving, active, conscious force who caused the infringement; if it did, the entire sales force of infringing companies would be personally liable.  *The individual liability standard does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the decision to engage in the infringing acts*, or otherwise caused the infringement *as a whole* to occur.

*Chanel, Inc. v. Italian Activewear of Fl.*, *Inc*., 931 F.2d 1472, 1478 n.8 (11th Cir. 1981)

(emphases added).  Similarly, the Third Circuit in *Donsco, Inc. v. Casper Corp.* concluded that

personal liability may properly extend to a "central figure" of the infringing entity who

"authorize[s] and approve[s]" the infringing acts.  *See* 587 F.2d 602, 606 (3d Cir. 1978).  In a

subsequent case, the Third Circuit stated that "*Donsco* indicates that a person who *knowingly and*

*significantly* participates in another's act of trademark infringement is himself guilty of

infringement."  *Elec. Lab. Supply Co., Inc. v. Cullen*, 977 F.2d 798, 807 (3d Cir. 1992) (emphasis

added) (also stating that "[t]he parties have not cited, nor has our research disclosed, any case

imposing aiding and abetting liability under the Lanham Act").

Following these authorities, the Court acknowledges that the key factual issue on this

motion is whether Piven: (1) knowingly and actively participated as a moving force in the

decision to engage in the sale of counterfeit Omega watches at  www.replicaland.com; or (2)

knowingly and actively caused the sale of counterfeit Omega watches at  www.replicaland.com

as a whole to occur.  Given Piven's sworn statements about his limited role in the logistical

operation of www.replicaland.com and his limited understanding of what was even being sold at

the website, there can be no doubt that there exists a material issue of fact as to Piven's knowing

and active participation in the purported counterfeiting scheme. *Cf. United States v. Premises Known as 717 South Woodward St.*, 2 F.3d 529, 533 (3d Cir. 1993) ("[A] court should be reluctant to grant a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind, for in such cases much depends upon the credibility of witnesses testifying as to their own states of mind, and assessing credibility is a delicate matter best left to the fact finder) (internal quotation marks and citations omitted); *Boyds Collection, Ltd. v. Bearington Collection, Ltd.*, 360 F. Supp.2d 655, 658 n.5 (M.D. Pa. 2005) ("Nothing in the Federal Rules of Civil Procedure excludes 'self-serving' evidence; indeed, the adversarial system of adjudication is premised upon the recognition that no party will be disinterested in the result."). Indeed, a reasonable jury could well conclude that the registered owner of www.replicaland.com—Kukharau—not Piven was the moving force in the decision to engage in the sale of counterfeit Omega watches at www.replicaland.com or was the cause of the infringement as a whole.

For these reasons, Plaintiffs motion for summary judgment as to Counts One, Two, Three and Five is **DENIED**.

### B.     Plaintiffs' Dilution Claim (Count Four)

The Court denies Plaintiffs' motion for summary judgment with respect to Count Four for the same reasons. Piven's limited participation in the operation of www.replicaland.com cannot in and of itself make him personally liable for the dilution of Plaintiffs' marks caused by the sale of replicas at www.replicaland.com absent a factual determination that Piven either: (1) knowingly and actively participated as a moving force in the decision to engage in the sale of counterfeit Omega watches at www.replicaland.com; or (2) knowingly and actively caused the sale of counterfeit Omega watches at www.replicaland.com as a whole to occur. Plaintiffs have

not cited, nor has the Court discovered, any case law regarding personally liability to the

contrary.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for summary judgment is **DENIED**.

An appropriate Order accompanies this Opinion.

s/ William J. Martini
**William J. Martini, U.S.D.J.**

cc:    The Honorable Ronald J. Hedges, U.S.M.J.